(112 N. W. 986.)

---

P. J. CARR AND ERICK ERICKSON, PLAINTIFFS AND RESPONDENTS, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, A CORPORATION, DEFENDANT AND APPELLANT.

Opinion filed July 8, 1907.

**Negligence — Contributory Negligence — Question for Jury.**

1. Contributory negligence, as well as negligence of the defendant, are questions for the jury in a case at law, unless the conceded facts from which the inference must be drawn admit of only one conclusion.

**Same.**

2. If the facts relating to contributory negligence or to negligence of the defendant are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury, and are only for the court when such that fair-minded men might draw only one conclusion from them.

**Injuries to Animals by Railway Trains — Contributory Negligence.**

3. In an action for negligence of a railroad company in killing and injuring cattle on defendant's right of way by train, plaintiffs rested after proving the killing, injury, and value; but on cross-examination of plaintiffs' witnesses, by whom such proof had been made, it had been shown that plaintiffs' buildings were one mile from the railway track; that the cattle in question were confined at the buildings during the night, but in the day time were driven south of the buildings and turned onto grass land according to custom; that they had never before the day in question been known to stray upon the defendant's right of way, but on the day of the accident they went upon the defendant's right of way, without the knowledge of the plaintiffs, and some were killed and others injured by one of defendant's trains. *Held*, that the question of plaintiffs' negligence in turning their cattle out under the circumstances was for the jury.

**Same — Negligence of Defendant — Directed Verdict.**

4. In such a case, where there is a conflict in the evidence as to the time of day when the accident occurred, and as to whether the day was foggy or clear, and as to whether the train regarding which the defendant's witnesses testified was the one which did the damage, and as to other facts, it being conceded by the defendant's witnesses that they did not stop the train which they were running, and which killed cattle on that day and took no precaution to avoid injury after they discovered the cattle, *held*, that the question of negligence on the part of the defendant was properly submitted to the jury, and the defendant's motion for a directed verdict was properly overruled

**Same — Instruction.**

5. Certain instructions to the jury examined and *held* proper.

**Trial — Instruction — Oral Request.**

6. While giving instructions to the jury, counsel interrupted the court with an inquiry regarding instructions, and after the court was through orally requested an instruction pursuant to such inquiry. *Held*, without reference to such request being in improper form or not stating the law correctly, that, by reason of its not having been submitted to the court in writing, it was not error to refuse it.

**Contributory Negligence — Pleading.**

7. Contributory negligence is a matter of defense, and should be pleaded.

**Trial — Instructions — Written Charge.**

8. Section 7021, Rev. Codes 1905, requiring the court to charge th jury in writing, is mandatory, and is intended to give the court opportunity to consider such request before instructing the jury.

**Same.**

9. If the defendant desired more explicit instructions than were given by the court, they should have been presented to the court in writing, with request that they be given.

Appeal from District Court, Foster county; *Burke, J.*

Action by P. J Carr and another against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Verdict for plaintiffs. From an order denying its motion for a new trial, defendant appeals.

Affirmed.

*Lee Combs* and *Alfred H. Bright,* for appellant.

There can be no recovery unless defendant's trainmen failed to exercise ordinary care to prevent injury to stock after they are discovered in a place of danger. Wright v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 12 N. D. 159, 96 N. W. 324; Peterson v. Wisconsin Cent. Ry. Co. 56 N. W. 639; Carey v. Chicago, M. & St. P. Ry. Co. 20 N. W. 648; Richardson v. Chicago & N.-W. Ry. Co. 14 N. W. 176; McMullen v. Dickinson Elevator Co. 65 N. W. 663; Bostwick v. Minneapolis & Pac. Ry. 2 N. D. 440, 51 N. W. 781; Hodgings v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 3 N. D. 382; 56 N. W. 139; O'Leary v. Brooks El. Co. 7 N. D. 554, 75 N. W. 919.

Contributory negligence was an issue in the case, and the instruction asked was proper. Habenicht v. Chicago, St. P. & O. Ry. 105 N. W. 910; Richardson v. Chicago, M. & St. P. Ry. Co. supra.

*T. F. McCue,* for respondent.

Permitting cattle to run at large is not of itself negligence. Cameron v. Great Northern Ry. Co. 8 N. D. 124, 77 N. W. 1016; Kearns v. Southern Ry. Co 52 S. E. 131; Johnson v. Chicago, M. & St. P. Ry. Co. 13 N. W. 673; Heath v. Coltenback, 5 Ia. 490.

It is the duty of the carrier to keep a lookout. Railroad Co. v. Watkins, 29 S. W. 232; Railroad v. Hewitt, 67 Tex. 479; Wright v. Railway, 2 Am. & Eng. R. Cases, 121.

The question of negligence was properly submitted. Bennett v. Chicago, M. & St. P. Ry. Co. 66 N. W. 934; Killbach v. Chicago, M. & St. P. Ry. Co. 84 N. W. 192.

Contributory negligence is an affirmative defense, and must be alleged and proved by him who relies on it. Ouverson v. City of Grafton, 5 N. D. 281, 65 N. W. 676; Gram v. Northern Pac. Ry. Co. 1 N. D. 252, 46 N. W. 972; Clark v. Canadian Pac. Ry. Co. 69 Fed. 543.

SPALDING, J. This is an action for the killing of certain cattle and the injury of others, the property of the plaintiffs, by a railway train of the defendant, on the defendant's right of way in section 1, township 145, range 66. The verdict was for plaintiffs in the sum of $90. Defendant's motion for a new trial was denied, and from this order defendant appeals.

In their complaint the plaintiffs allege damages in the sum of $100, and charge the defendant, through its agents and employes, with carelessness and negligence in running and operating its train, which resulted in the killing and injury. The defendant answered, admitting the killing of certain cattle on the 7th day of November, 1903, and that they were, in their belief, the property of the plaintiff Carr, and charges them with trespassing on the right of way and railway tracks of the defendant at the time of such accident, and denies that the damages exceeded $60, and, as to other allegations of the complaint, makes general denial. The case was tried to a jury, and the plaintiff Carr testified as to the date, location, killing, and injury, and that the damage was $90. On cross-examination it was shown that he lived one mile south of the railway track, and had a section of land there, and the plaintiff Erickson had a half interest in the stock, and that at the time of the accident they were pasturing their cattle by letting them run at large on the prairie, and inclosing them in a corral at the house at night. The morning before the accident occurred the cattle had been turned out from the corral with no one in charge. There were 50 head, and they had been driven onto 320 acres of grass land south of the buildings on the side of the track where they were turned out. We infer from the

evidence that the track ran northwest and southeast. The other side was stubble land, and they had never been known before to go toward the railway track, and there was no fence between the corral and the premises and the railway track. The owners had kept watch of them, and none had been killed before. They had generally stayed south of the buildings until evening. One Murphy testified on behalf of plaintiffs that he was fixing a fence about 50 rods from where the accident occurred, and saw it. The train was a freight, and he thought it was making pretty good time, but was unable to estimate the speed at which it was running. When he first observed the train, the cattle were on the right of way, and the train was quite a little distance from the cattle, probably 60 or 80 rods. When he first noticed them on the right of way, he quit working and ran towards the train. The cattle and the train were running east. The train seemed to run faster after it got among the cattle. He also testified that the accident occurred between 2 and 3 o'clock, that the train sounded a signal, but as there was a crossing there, he did not know whether it was for the crossing or for the cattle. He also testified that the train stopped about a quarter of a mile from where it struck the first animal, and a man appeared to pull an animal from under the engine box, but the train got away before he reached it. On cross-examination he testified that it was a clear, bright day, of which he was sure. He thought the train was about a quarter of a mile from the cattle when the alarm was sounded, and testified that the track was straight with nothing to obstruct the view of the engineer, and that they appeared to put on more steam in an effort to catch the cattle. The plaintiffs rested, and the defendant moved the court to instruct the jury to return a verdict for the defendant, because the evidence showed the plaintiffs guilty of contributory negligence, which was the approximate cause of the injury complained of, and because there was no evidence to establish the fact that the defendant wrongfully or negligently caused the injury complained of. The court denied this motion, to which the defendant excepted, and assigned the ruling of the court as error.

By section 4297, Rev. Codes 1905, the killing or damaging of stock by cars or locomotives along the railroad is made *prima facie* evidence of carelessness and negligence on the part of the corporation. It therefore became necessary for the defendant to

overcome the *prima facie* case made by the plaintiffs, when they showed the killing and injury. Did it do so on the cross-examination of the plaintiff Carr and the witness Murphy? It is, in substance, contended by the appellant that it did. This contention is based largely upon the authority of Wright v. Railway Co. 12 N. D. 159, 96 N. W. 324, wherein the court held the plaintiff guilty of contributory negligence as a matter of law. We are unable to agree with the appellant's counsel in his opinion that the case above cited is authority in this case, for the reason that the facts are materially different. In that case, the buildings of the plaintiff were only 30 rods from the railway track, and the stock was known to be in the habit of going upon the right of way and had done so all winter, and the plaintiff "had seen them do so a good many times up to the day of the killing," and knew that his horse was in danger, and usually drove it out when he saw it on the right of way. Some of his cows had been killed by the defendant a short time before, yet he turned his horse out on the 14th day of April, the day of the accident, without watch or attendant, to follow his habit of going on the right of way. On that day both the plaintiff and his hired man saw his horse on the right of way, but made no endeavor to drive it out of its exposure to danger. The court held that by reason of the plaintiff having turned his horse out, in defiance of the law prohibiting it being at large at that season of the year, in a place of known danger, and with knowledge of its habit of going onto the right of way, to become a menace to the safety of the traveling public and to the rights of the common carrier, the plaintiff was guilty of contributory negligence which would defeat his recovery.

The case at bar, as relates to the acts of both plaintiffs and defendant, stands upon a different state of facts. The buildings of the plaintiffs from which the cattle were driven were one mile from the railway tracks, and the cattle had not before been known to go upon the right of way. There was no inducement for them to go, because it was stubble on that side, while it was grazing land upon the side where they were turned out. The evidence, as it stood at the time this motion was made, it seems to us, leaves the question of contributory negligence, if in the case at all, a proper one for submission to the jury. Contributory negligence, as well as negligence of the defendant, are questions for

the jury in a case at law, unless the conceded facts from which the inference must be drawn admit of only one conclusion. If the facts are such that different, impartial minds might fairly draw different conclusions from them, they should be submitted to the jury, and are only for the court when such that fair-minded men might draw only one conclusion from them. Mares v. N. P. Ry. Co. 3 Dak. 336, 21 N. W. 5; Id. 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296; Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427; Cameron v. Ry. Co. 8 N. D. 124, 77 N. W. 1016; Owen v. Cook, 9 N. D. 134, 81 N. W. 285, 47 L. R. A. 646; McKeever v. Homestake Mining Co. 10 S. D. 599, 74 N. W. 1053; Bohl v. Dell Rapids, 15 S. D. 619, 91 N. W. 315; Pyke v. City of Jamestown (N. D.) 107 N. W. 359; Sarja v. G. N. Ry. Co. 109 N. W. 600, 99 Minn. 332. The defendant, by the cross-examination of the plaintiffs and the witness Murphy, had not overcome the *prima facie* case made against it under the statute, when the fact of the killing and injury by its train was shown, and the court rightly denied this motion. The engineer on one of the defendant's trains testified that on the 7th day of November, 1903, he was pulling a freight train from Enderlin to Harvey, and, when near Bordulac, he struck some cattle, and that it was between 11 and 12 o'clock in the forenoon of that day, and that he never knew to whom the cattle belonged; that he was running 28 or 30 miles an hour, and hauling 28 or 30 cars, mostly loaded and going east. He also testified that, when he first saw the stock, it was 20 or 25 car lengths from him, or about 40 or 50 rods, and that it was a very foggy day. The cattle were close to the right of way, the nearest one about 14 feet from the rails. He opened the cylinder cock, and blew out steam and made a noise, and most of them turned back, but three or four attempted to cross the track ahead of the train. When he noticed that the cattle were agitated and manifested a disposition to rush upon the track, it was absolutely impossible for him to stop the train, or avoid injuring them. He also testified that he thought it would take about 30 seconds or a little less to run the 45 rods, and that he did not stop his train, and pulled no animal from under the engine, and that it was in his judgment absolutely impossible to avoid injury under the circumstances, and that he did not apply more steam to increase the speed of the train, neither did he shut off steam. The cattle did not show any disposition

to go upon the track until he was about 25 or 30 feet from them. On cross-examination he testified that after he got 25 or 30 feet from them they ran 12 feet onto the track. He thought the train was about 45 rods from them when they were first seen, but that it might have been a little farther. He also testified that when he first saw them they were very close to the track, but that he made no effort to slow his train, and could not tell whether they were cattle or men; that he did not apply the airbrakes, and made no attempt to slow up to ascertain what the objects were; that he could not have stopped the train 60 rods from the cattle at the rate of speed that he was running at that place without difficulty, although he had never tried stopping such a train when he measured the distance, but had often tried to stop quickly; and that he sounded the whistle before he got among the cattle, and the cattle had not been running along ahead of the train on the track, but started to cross the track. The fireman testified that he did not see the cattle until the whistle sounded, as he was shoveling coal, and that it was then impossible to stop the train in time to avoid injury to the stock, and that he remembered the day was foggy. He did not know how far they were from the stock when the engineer first saw them. The plaintiff Carr was called in rebuttal, but his testimony was unimportant. After both parties rested, the defendant moved the court to direct a verdict in its behalf, on the ground of contributory negligence on the part of the plaintiffs, and because the presumption of the statute, regarding the killing of stock, had been rebutted, and the plaintiffs had failed to establish any negligence on the part of the defendant causing the injury, and also because from all the evidence the plaintiffs had failed to establish a prima facie case or to establish a cause of action by a fair preponderance of the evidence which entitled them to recover under the circumstances in the case as stated in their complaint, or otherwise. This motion was denied, exception taken, and the ruling assigned as error. The cases cited supra establish the law in this jurisdiction regarding negligence, as well as contributory negligence in its application to a directed verdict.

It will be observed that there was a conflict in the testimony as to the condition of the atmosphere on the day of the accident. If, as plaintiffs' witness testified, it was clear and bright, with a clear view of the track unobstructed for a very long distance, and

the engineer saw the cattle at so great a distance that he was unable to distinguish whether they were cattle or men, and then failed to make any effort to stop the train to avert the accident, it would be a clear case of negligence on the part of the defendant. On the other hand, if the day was foggy, and the engineer only saw the objects for the first time, when they were so close as to make it impossible to avoid the accident, the defendant would probably not be guilty of negligence justifying recovery.    There was also a question of fact as to the train which the defendant's witnesses were operating being the train which did the damage. The testimony on that subject was in conflict as to the time of day, and whether the train was stopped after the accident.    The jury might well have found, and for aught we know, did find, that the damage was done by some other train than the one run by defendant's witnesses.    But these were disputed facts, and facts which had to be determined before a verdict could be rendered. The jury was there to find the facts, and it is clear to us that it would have been error on the part of the court to have granted the defendant's motion.

The next assignment of error relates to the instructions of the court to the jury, contained in the following paragraphs: "(1) The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is clearly responsible for the accident.    The mere fact that the plaintiff was injured while trespassing on the defendant's premises, and would not have been injured if he had not been so trespassing, is not of itself enough to convict him of contributory negligence.    (2)    It is well settled that the plaintiffs may recover damages for injury caused by the defendant's negligence, notwithstanding the plaintiffs' own negligence in exposing their stock to injury, if such injury was approximately caused by the defendant's omission, after becoming aware of the danger of the plaintiffs' property, to use ordinary care for the purpose of avoiding injury.    (3)    If you believe from the evidence in this case that the railway company had its train properly equipped with airbrakes and modern appliances, and that after the stock was discovered to be in a place of danger said employes exercised ordinary care not to injure them, you must find for the defendant.    If, on the other hand, you find from the evidence in the case that the defendant's employes did not use ordinary care not to injure the stock after they were discovered to

be in a place of known danger, it would be your duty to find for the plaintiffs in such sum as you would find they had been injured." These instructions appear to us to come within the rule in such cases, declared in Bostwick v. Railway Company, 2 N. D. 440, and the cases there cited and commented upon, and also in Wright v. Ry. Co., supra, where the court announced the law applicable as follows: "The plaintiff's horse was a trespasser upon the defendant's right of way, and, as to it, the measure of defendant's duty was to exercise ordinary care not to injure it after it was discovered to be in a place of known danger." See, also, Hodgins v. Ry. Co., 3 N. D. 382, 56 N. W. 139; O'Leary v. Elevator Co., 7 N. D. 554, 75 N. W. 919, 41 L. R. A. 677. It is unnecessary for us at this time to make further comment upon the principles there discussed. We conclude that the court did not err in giving these instructions, and particularly when taken in connection with other portions of the charge. See, also, Sarja v. G. N. Ry. Co., supra.

The trial court, among other things, in addition to portions of the charge on which error is assigned, instructed the jury that the fact that the "cattle were trespassing upon the track does not absolve the company from preventing injury upon them, if by the exercise of due care, it could be avoided. What is due care on the part of the company under such circumstances is necessarily a question of fact, and depends upon the circumstances of each case. Gentlemen, you are the judges of the facts in this case, and probably the pivotal fact in this case to be determined is this: Did the railway company through its employes use ordinary care to prevent injury to the stock after they discovered them in a position of danger? The defendant's duty was to exercise ordinary care not to injure said stock after it was discovered to be in a place of known danger. As to whether or not the defendant's engineer discovered the stock in due time to avoid injurying them is a question of fact for you to decide. It is also a question of fact for you to decide when [whether] these cattle were in a place of danger. That is the pivotal question in this case." During the delivery of the charge to the jury, counsel for defendant interrupted the court with an inquiry regarding instructions concerning contributory negligence, and, after the completion of the charge, he requested the court orally to instruct the jury that, under no circumstances can the plaintiffs recover, if it appears that this injury was due to contributory negligence of plaintiffs in permitting the

stock to run at large, trespassing upon defendant's tracks, knowing the danger and hazard that they were subject to by so doing. The court refused this request, and such refusal is assigned as error.

The defendant did not plead contributory negligence as a defense, and, for this reason, it was not entitled to an instruction on the subject. Vol. 11, Enc. Pl. & Pr. p. 162, n. 1, and cases cited. Section 7021, Rev. Codes 1905, requires the court to charge the jury only as to the law in the case, and prohibits any instruction in a civil case, unless it has first been reduced to writing, and provides that either party may request instructions to the jury, but that each instruction so requested must be in writing and on a separate sheet. This is a salutary provision of law intended to give the court opportunity to consider any requests for instructions, and is mandatory. Vol. 11, Enc. Pl. & Pr. p. 254. But even if the failure of the defendant to plead contributory negligence did not relieve the court of the duty of giving instructions on that subject, if properly requested, it was not error under the circumstances to refuse the oral request. The court had fairly covered the law applicable to the case, and, if the defendant desired more explicit instructions on the subject, they should have been presented to the court in writing with a request that they be given. Vol. 11, Enc. Pl. & Pr. p. 261, n. 7; McCummins v. State (Wis.) 112 N. W. 25. We fail to find any prejudicial error in the record.

The order of the district court denying defendant's motion for a new trial is affirmed, with costs to plaintiffs. All concur.